### STATE ex ERMAN v GILMAN

Ohio Appeals, 1st Dist, Hamilton Co

Decided Dec 5, 1932

Paxton & Seasongood, Cincinnati, for relator.

John D. Ellis, City Solicitor, Cincinnati, for respondents.

Freiberg & Simmonds, Cincinnati, and Taft, Stettinius & Hollister, Cincinnati, for parties defendant.

400

HAMILTON, J.

The case is considered on the demurrer. It will be noted that the petition does not state any special or private right of the relator invaded or postponed by the action or nonaction of the defendants. The sole right of relator to maintain the action is grounded on his being a citizen of the city of Cincinnati, and it is claimed, under authority of **Brissel et, County Commrs. v State ex McCammon, 87 Oh St, 154, 100 NE 348**, that this allegation is all that is necessary to entitle him to maintain the action. It is true that under the third paragraph of the syllabus of that case a broad statement of the general rule of law is made, which is to the effect that, where the relief sought is the enforcement of a public duty by a public officer or board it is sufficient to sustain the right of the relator to maintain the suit that he show that he is a citizen, and, as such, interested in the execution of the laws. Undoubtedly this is the general rule in Ohio, although contrary, as we view it, to the weight of authority. See note in 52 L.R.A., N.S., 415 et seq. This rule was first pronounced by the Supreme Court of Ohio in the case of **State ex v Henderson, 38 Oh St, 644.**

In the Henderson case the Supreme Court stated in the opinion, at page 649, that: "Where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and, as such, interested in the execution of the laws."

An examination of the authorities leads to the conclusion that the Supreme Court has gone farther in the use of the writ to control official action than any of the other courts of the several states, and farther than the federal court. This court is controlled by the action of the Supreme Court of Ohio, if applicable. However that may be, neither the Supreme Court of Ohio nor any other court in any reported decision has ever held that the writ will lie to compel action on the part of the legally constituted authority where the exercise of that authority involves judicial, quasi-judicial, or discretionary powers. In fact, all authorities hold that the writ will not lie where the matter complained of involves the exercise of quasi-judicial or discretionary powers, but will lie where the duty is ministerial.

In the cases decided by the Supreme Court of Ohio, while the general rule has been stated, an examination shows some special interest in each case on the part of the relator. The Brissel Case, supra, relied upon, involved a breach of an agreement among the several commissioners of adjacent counties establishing a hospital. After the arrangement was made and the hospital built, the commissioners of one county refused to carry out their financial obligation. The commissioners of another county of the district brought the action, praying for a writ. It was unnecessary in that case to resort to the general rule as to the right to bring the action, since it would seem that the relator would have a special interest in its enforcement as a taxpayer and party to the contract.

In the Henderson case, supra, the second paragraph of the syllabus is: "Mandamus will not lie upon the relation of a citizen and owner of land abutting upon a street through which said line of railroad would pass if constructed, to compel the city clerk to make the advertisement required of him by the ordinance, when he **wrongfully refuses or neglects so to do.**" **(Black face ours).**

This was a case where the city clerk refused to make publication of the passage of an ordinance concerning a right of way for a railroad. The court in the opinion states, at page 650:

"What would be the relator's rights in such a state of affairs it is unnecessary to discuss. Suffice it to say that the publication of the advertisement for proposals would invest him with no right whatever against the city or any of its officers or against any person or company. How then can he ask this order against the city clerk? He is an officer of council and bound to obey its orders. If he fails to do so, that body is by no means powerless; but if it is satisfied, what business, we ask, is it of any other person? I cannot complain of your agent because he has not performed his duty toward you in a matter in which I have no interest and where you are satisfied. Were this writ asked upon the relation of the city against its officer the case might be otherwise, but the city is not complaining.

"We are unable to see that any right of the relator has been invaded or postponed, or to find interest in him which would be legally affected by granting him the relief prayed for."

Applying this pronouncement to the instant case, the relator states no right as to him that is invaded or postponed. There is no allegation that he has ever applied, or that any one in whom he is interested has applied, for a license to operate taxicabs in the city of Cincinnati; or that more cabs are licensed than public necessity demands.

If the director of public utilities failed to perform his duties to the great detriment of the city, the law affords a method of removal.

It must be considered that the decision in the Henderson case was made in the light of the general rule as to the right of a citizen to bring such an action. Moreover, as heretofore stated, no court has ever held the writ to lie where the matter sought to be enforced is quasi-judicial in its character or involves the exercise of discretion.

It will be noted that the petition recites facts on which the director might be justified in finding that the holder of the licenses sought to be revoked had failed for 60 consecutive days to make a reasonable and consistent effort to operate such taxicabs, and would be justified in notifying the city treasurer to that effect. These allegations themselves show there was a question of fact to be determined by the director before action. It must be considered that these licenses are property rights of Taxicabs of Cincinnati, Inc. Taxicabs, Inc., may have a complete defense to these facts, and might be able, on hearing, to show that they had made every reasonable and consistent effort to operate the taxicabs during the time. This shows the quasi-judicial character of the obligations imposed on the director of public utilities of the city of Cincinnati to determine under the facts whether he was required under the ordinances to notify the city treasurer to cause the revocation of the licenses.

It may be claimed that the facts alleged in the petition could be controverted by answer, and that this court could try the question whether or not under the facts the officers should have acted, as prayed for in the petition. This would mean that this court would take from the director of public utilities of the city of Cincinnati the power to determine the facts as to the violation of the ordinances, which is judicial. The result would be, the court, through mandamus, would try the facts, removing therefrom the power vested in the defendants. The relief sought is not to compel the officer to act, but that he be ordered to act in a certain way.

If the relator has rights that have been invaded or postponed, he has ample remedy; and, if the city desires to complain of its agent, it has ample remedy.

Carried to a logical conclusion, to grant this writ would establish the proposition that the courts have supervisory control over all executive and administrative officers as to the discharge of their legal duties, and that, upon complaint of a dissatisfied citizen concerning the discharge of such duties, the court will, by mandamus, inquire into the matter complained of, and direct and command the officer regarding the execution of his duties, notwithstanding no detriment or injury to the public or the relator is charged. This, in effect, would contravene the provision of the United States Constitution establishing the three branches of government, executive, legislative, and judicial, and would destroy the independence of the executive branch. The majority of the court are unwilling to subscribe to the usurpation of such power by the courts. We believe the American system of removing officers, derelict in the discharge of their duties, by the electorate at the polls, is the better way and the better law, in the absence of any detriment or injury to the public or the individual complaining, and especially so when the matter complained of is quasi-judicial and involves the exercise of discretion on the part of the officer. It may be claimed that under the facts alleged in the petition the director has no discretion. This begs the question. The truth must be first ascertained, which is primarily the duty of the director, and is not merely a ministerial act.

The conclusion of the majority of the court is that the plaintiff has not the right to maintain this action, and that the petition does not state facts sufficient to constitute a cause of action.

The demurrer is sustained, and the petition dismissed at the costs of the relator.

Petition dismissed.

ROSS, PJ, and CUSHING, J, concur.

ROSS, PJ:

I concur in the majority opinion; but for these reasons: The allegations of the petition and of the amendment to the petition

definitely set forth an abuse of discretion on the part of the director of public utilities in refusing to take the required action when the licensees have for more than 60 consecutive days failed to make any reasonable and consistent effort to operate such taxicabs under their licenses. The relator being merely a citizen, under the third paragraph of the syllabus in the case of **Brissel et, County Commrs. v State ex McCammon, 87 Oh St, 154, 100 NE 348,** would have the right to maintain such an action. This rule is, however, directly modified by the decision in the case of **Luginbuhl et, County Commrs. v State ex Blank, 100 Oh St, 223, 126 NE 71,** wherein the court say: "The record in this case discloses no abuse of that discretion, **nor does it disclose that the relator has been deprived of any right guaranteed to a citizen by the constitution of the state or of the United States, and therefore no case is made justifying the issuance of the extraordinary writ of mandamus.** The courts will not usurp functions which by law are vested in administrative bodies."

Ohio thus has fallen in line with the great weight of authority, requiring the violation of such personal right in order to give a relator the right to mandamus. The relator, therefore, has no capacity to sue under the allegations of the pleadings, though otherwise a cause of action is stated.